UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

RASHIKA COLLIER,          )
                                            )
               Plaintiff,    )    Case No. 1:11-cv-1144
                                            )
v.                                        )    Honorable Joseph G. Scoville
                                            )
COMMISSIONER OF         )
SOCIAL SECURITY,        )
                                            )    **OPINION**
              Defendant.   )
_____)

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits. On November 21, 2008, plaintiff filed her application for benefits alleging an April 25, 2008 onset of disability.[1] (A.R. 128-30). Her claim was denied on initial review. (A.R. 69-77). On March 10, 2011, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 28-64). On March 18, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 11-20). On August 29, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, December 2008 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 13).

Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ committed reversible error in failing to consider listing 12.05(C) when the claimant earned a valid IQ score of 68, a performance IQ of 75, and a full scale IQ of 69, and the ALJ found three additional severe impairments;

2. The ALJ erred as a matter of law by failing to give a sufficiently specific description of plaintiff's ability to perform work-related mental activities when both the RFC assessment and the sole hypothetical question posed to the VE contained only exertional limitations and work limited to simple, routine, and repetitive tasks; and

3. The ALJ violated the treating physician rule by (a) failing to give controlling weight to Erica Armstrong, M.D.'s opinions, (b) failing to assign weight to Dr. Armstrong's opinions, (c) failing to weigh the factors set forth in 20 C.F.R. § 416.927, and (d) failing to provide good reasons for the weight given to Dr. Armstrong's opinions.

(Statement of Errors, Plf. Brief at 1, docket # 14). The Commissioner's decision will be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after November 21, 2008. (A.R. 13). He found that plaintiff had the following severe impairments: "left knee arthritis, obesity and an affective disorder." (A.R. 13). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 14). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find claimant has the residual functional capacity to perform work limited to lifting or carrying up to 20 pounds occasionally and 10 pounds frequently. She can sit for up to 6 hours and walk or stand up to 2 hours in an 8-hour workday, with normal breaks. She can occasionally climb ramps or stairs, but never ladders, ropes or scaffolds. She can occasionally stoop, but can perform no kneeling, crawling or crouching. Claimant is also limited to simple, routine and repetitive tasks.

(A.R. 15). The ALJ determined that plaintiff's subjective complaints were not fully credible. (A.R. 15-18). Plaintiff was unable to perform her past relevant work. (A.R. 18). Plaintiff was 37-years-old on the date she filed her application for benefits and 39-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for SSI benefits, plaintiff was classified as a younger individual. (A.R. 18). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 18). The transferability of job skills was not material to a disability determination. (A.R. 18). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 11,700 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 60-61). The

ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 19-20).

**1.**

Plaintiff argues that the ALJ committed reversible error "in failing to consider" whether she met or equaled the requirements of listing 12.05(C). (Plf. Brief at 16-20; Reply Brief at 5). Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006). "In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009). It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, 507 F. App'x 470, 472 (6th Cir. 2012). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"Listing 12.05 describes circumstances in which mental retardation is severe enough to preclude gainful activity." *Turner v. Commissioner*, 381 F. App'x 488, 491 (6th Cir. 2010). "The structure of listing for mental retardation is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one

of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010); *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

The specific requirements of listing 12.05 are as follows:

> 12.05 Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A.  Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D.  A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment. (A.R. 14).

Plaintiff disagrees with the ALJ's factual finding that her IQ scores were not a valid indicator of her actual level of functioning. She argues that her low IQ scores, obtained during a consultative examination in 2010 conducted by Psychologist Richard L. King on a referral from plaintiff's attorney, were valid. The ALJ found that these IQ scores were not a valid indicator of

plaintiff's level of intellectual functioning and that consultative examiner King's opinions were entitled to little weight:

> Another mental functional assessment is from Dr. Richard King in August 2010 (Exhibit 28F). Dr. King saw claimant one time, at the request of her attorney, and so is no more credible than a State consultative examiner. In addition, he took no history of medication overuse or abuse, with symptoms relieved by diminished medication. Therefore, his conclusions of "extreme" limitations in nearly every category (Exhibit 29) are suspect. In addition, those conclusions are not consistent with the claimant's ability to communicate effectively with her doctors and at her hearing, as well as her admissions of being able to perform her personal care, daily activities, and some social activities as noted in the records. They are also inconsistent with the GAF scores of 58, 65, and 70 as noted in other places in the record. Furthermore, Dr. King performed IQ testing with scores between 68 and 75. This is inconsistent with claimant's obtaining her GED and running a daycare business. There are no other indications in the record of mental retardation or borderline intellectual functioning. Therefore, Dr. King's opinions are given little weight.

(A.R. 17).

The ALJ is responsible for making factual findings regarding the validity of IQ scores, not the court. *See Baker v. Commissioner*, 21 F. App'x 313, 315 (6th Cir. 2001) (citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *see also Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (collecting cases); *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (same). The only IQ test scores submitted were from August 18, 2010. There were no other IQ test results suggesting mental retardation or even borderline intellectual functioning. Further, it is undisputed that plaintiff ran a daycare business. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534; *see Rogers v. Commissioner*, 486 F.3d at 241. The ALJ's finding that the work plaintiff had performed undermined the validity of her low IQ scores is supported by more than substantial evidence. Thus, the ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment, including listing 12.05(C), is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ erred as a matter of law by failing to give a sufficiently specific description of plaintiff's ability to perform work-related mental activities when both the RFC assessment and the sole hypothetical question posed to the VE contained only exertional limitations and work limited to simple, routine, and repetitive tasks. (Plf. Brief at 13-16; Reply Brief at 4-5).

The ALJ found that plaintiff retained the RFC for "simple, routine and repetitive tasks." (A.R. 15). The ALJ's factual finding in this regard is supported by more than substantial evidence. (*see* A.R. 15-18). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).

Plaintiff's argument that the ALJ's hypothetical question to the VE was inadequate conflates the ALJ's findings at distinct stages of the sequential analysis, ignores the ALJ's credibility determination, and disregards the more carefully calibrated nature of the ALJ's factual finding regarding her RFC.

A.   Step 3 of the Sequential Analysis

The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis.[2] See 20 C.F.R. § 416.920(a)(4)(iii). Step-3 regulates

---

[2]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed

a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted). It is well established that a claimant has the burden of demonstrating that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. By contrast, the administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis and it is applied at steps 4 and 5. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

The ALJ determined at step 3 of the sequential analysis that plaintiff's impairments did not meet or equal the requirements of any listed impairment. (A.R. 14). Plaintiff's mental impairments did not come close to satisfying the demanding paragraph B severity requirements of listings 12.04 and 12.09:

---

impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

Claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.09. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

Claimant conceded she has no problems with performing her personal care (Exhibits 3E/2; 9E/2). She is able to go out with friends and family (Exhibits 3E; 9E). She can handle money appropriately (Exhibits 3E/4; 9E/4). Various medical records note that she is pleasant on examination (see e.g., Exhibit 37F/3), in spite of reporting irritability and anger. She did break up with her long-term boyfriend in 2008 (Exhibit 9F/1), but apparently obtained another boyfriend and had other friends in 2009 (Exhibit 14F/10). She felt she could follow instructions (Exhibit 3E/6), though later she suggested problems with memory or concentration (Exhibit 9E/6; testimony). There were times when her medication made her lethargic and when her mood disorder made her emotional, with resulting problems in maintaining her focus. She was able to testify clearly and logically at her hearing.

Based on the foregoing evidence, I find that in activities of daily living, claimant has mild restriction. In social functioning, claimant has mild difficulties. With regard to concentration, persistence or pace, claimant has moderate difficulties. As far as episodes of decompensation, claimant has experienced no episodes of decompensation, which have been of extended duration.

Because claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. Claimant does not have a disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in environment would predictably cause decompensation. She does not have a history of one or more years' inability to function outside a highly supportive living arrangement.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96–8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(A.R. 14-15).

Plaintiff is not challenging the ALJ's step-3 finding that she did not meet or equal the requirements of listings 12.04 or 12.09. Rather, she is attempting to take a portion of the ALJ's finding with regard to the paragraph B criteria at step 3 out of context and substitute it for the ALJ's factual finding that she retained the RFC for "simple, routine, and repetitive tasks." (A.R. 15). The paragraph B criteria used at steps 2 and 3 of the sequential analysis "are not an RFC assessment." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96–8p (reprinted at 1996 WL 374184, at * 4 (SSA July 2, 1996)). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments." *Id.* at 4; *see Tippett v. Commissioner*, No. 3: 10-cv-1427, 2011 WL 6014015, at * 12 (D. Or. Dec. 2, 2011); *Reynolds v. Commissioner*, No. 10-110, 2011 WL 3897793, at * 3 (E.D. Mich. Aug. 19, 2011); *Johnson v. Astrue*, No. 3:09-cv-492, 2010 WL 3894098, at * 8 (M.D. Fla. Sept. 30, 2010). The ALJ's step-3 findings do not undermine his finding that plaintiff retained the RFC for simple, routine, and repetitive tasks.

B. Step 5 of the Sequential Analysis

Plaintiff argues that the ALJ's hypothetical question to the VE was inadequate because it did not take her mental impairment into account. The hearing transcript shows that the hypothetical question included the restriction of simple, routine, and repetitive tasks. (A.R. 60). A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of*

*Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's testimony was not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Parks v. Social Security Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [ ] need only incorporate those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.' ") (quoting *Casey*, 987 F.2d at 1235). The hypothetical question the ALJ posed to the VE was accurate and the VE's testimony in response provided substantial evidence supporting the ALJ's decision.

**3.**

Plaintiff argues that the ALJ violated the treating physician rule by (a) failing to give controlling weight to Erica Armstrong, M.D.'s opinions, (b) failing to assign weight to Dr. Armstrong's opinions, (c) failing to weigh the factors set forth in 20 C.F.R. § 416.927, and (d) failing to provide good reasons for the weight given to Dr. Armstrong's opinions. (Plf. Brief at 7-13; Reply Brief at 1-4).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. § 416.927(d)(1), (3); *Bass v.*

*McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment, because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v.*

*Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 702 F.3d at 376.

Plaintiff argues that the ALJ should have given controlling weight to "a work-preclusive physical RFC assessment" Dr. Armstrong completed on September 24, 2010. (Plf. Brief at 7) (citing A.R. 488-89). The RFC assessment in question covers slightly more than a page and does not reflect the results of any objective tests. Rather, it states that plaintiff has "bipolar disorder" and "left knee chronic pain s/p [status post] ACL repair" and then lists a series of opinions without

further explanation. The issue of RFC is reserved to the Commissioner. Dr. Armstrong's opinions regarding plaintiff's RFC were not entitled to any particular weight. *See* 20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d at 652. The ALJ considered all the restrictions suggested by Dr. Armstrong, and accepted some and rejected others:

> As for the physical limitations, Dr. Erica Armstrong, the primary care provider, offered her opinions of claimant's abilities in a statement of September 2010 (Exhibit 30F). Dr. Armstrong's lifting and sitting/standing/walking limitations are consistent with the overall evidence of record and are essentially incorporated into the residual functional capacity. Most of the postural limitations are accepted as well. I find no credible support for the limitations against the use of upper extremities, as the claimant seems to have made a good recovery from her elbow surgeries. I find that the moderate arthritis in one knee is adequately addressed by the limited standing and walking claimant would be required to do, so a sit/stand option is not a necessity. Where I part company with Dr. Armstrong is in her conclusory statements that the claimant would need to take breaks throughout the day, would miss more than 3 days each month, and can only perform part time work. This is not consistent with the rest of Dr. Armstrong's limitations and certainly not consistent with the limited pathology and the treatment records. Perhaps Dr. Armstrong was basing these conclusions on the claimant's psychological status, but if so, such conclusions are contrary to the psychological treatment records.

(A.R. 18). The ALJ did not violate any aspect of the treating physician rule when he made a factual finding that plaintiff retained a RFC different from the RFC suggested by plaintiff's treating physician. *See Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009); *Ford v. Commissioner*, 114 F. App'x 194, 198 (6th Cir. 2004).

Plaintiff argues that the ALJ erred in failing to state what weight was given to Dr. Armstrong's RFC statement. (Plf. Brief at 8-9). It is pellucid from the above-quoted paragraph that the ALJ explained the weight he gave to Dr. Armstrong's opinions. The ALJ explained which of the proffered RFC restrictions were accepted and which were rejected and why. (A.R. 18).

Plaintiff argues that the ALJ failed to balance the factors set forth in 20 C.F.R. § 4[16.927(c)].³ (Plf. Brief at 9-10; Reply Brief at 2). The ALJ considered the relevant factors (A.R. 15, 18) and he adopted most of the limitations suggested by Dr. Armstrong, because she was plaintiff's primary care provider. The ALJ "parted company" with Dr. Armstrong when it came to her conclusory statements in the physical capacities questionnaire responses asserting that plaintiff would need breaks throughout the day, would miss more than three days each month, and could only perform part time work. (A.R. 18). The ALJ was entirely correct when he found that the questionnaire responses regarding these purported limitations were "conclusory." Dr. Armstrong gave no explanation of the medical or psychological evidence supporting the proposed restrictions. (A.R. 504-05). Armstrong's treatment records did not support the proposed limitations. (A.R. 454-79, 504-629).

Plaintiff argues that the ALJ failed to provide "good reasons" for rejecting Dr. Armstrong's opinion that plaintiff's RFC should include a restriction limiting her to work with a sit/stand option. (Plf. Brief at 10-13). Dr. Armstrong gave no explanation why she believed that such a restriction was appropriate. (A.R. 488). The ALJ found that plaintiff's moderate arthritis in one knee was adequately addressed by the limited standing and walking plaintiff would be required to perform. (A.R. 18). No medical basis for restricting plaintiff to work with a sit/stand option is apparent. Plaintiff's medical records were "[n]egative for arthritic and chronic back problems." (A.R. 372). Her motor and sensory function remained intact. Her motor strength was "5/5" in all extremities." (A.R. 411, 598). Her gait was normal. (A.R. 411, 532).

---

³Although plaintiff's brief and reply brief cite 20 C.F.R. § 404.1527(d)(2), the court assumes that plaintiff intended to cite the regulation applicable to her claim for SSI benefits, 20 C.F.R. § 416.927. Further, the provisions of former subsection (d) are now found in subsection (c).

In addition, plaintiff states that the ALJ failed to provide good reasons for rejecting "Dr. Armstrong's other work preclusive opinions regarding limitations Ms. Collier would have as an employee." (Plf. Brief at 11). There is no developed argument corresponding to this alleged error. Issues raised in a perfunctory manner are deemed waived. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012).

Even assuming that plaintiff did not waive the issue, it is meritless. Dr. Armstrong's questionnaire responses were not supported by any explanation of the medical evidence supporting the proposed restrictions. (A.R. 488-89). The physician's "conclusory statements" that plaintiff "would need to take breaks throughout the day, would miss more than 3 days each month, and [could] only perform part time work" were "not consistent with the rest of Dr. Armstrong's limitations and certainly not consistent with the limited pathology and the treatment records." (A.R. 18). Further, the ALJ considered the possibility that Dr. Armstrong was basing her "Physical Capacities" questionnaire responses on plaintiff's "psychological status." (A.R. 18). The ALJ found that plaintiff's psychological treatment records did not support the above-referenced restrictions. (A.R. 16-18). The ALJ's finding in this regard is supported by more than substantial evidence. The ALJ was not bound to accept any of the proposed RFC restrictions and he gave good reasons for all the proposed restrictions that he rejected.

**Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.

Dated: August 27, 2013          /s/ Joseph G. Scoville
                                United States Magistrate Judge